Albert L. Magilton v. Harry W. Stevenson, (Appellant), Charles H. Fullaway and Thomas S. Middleton.

*Partnership—Equity—Bill for dissolution of partnership and for an account.*

A partnership between plaintiff and defendants was formed for the single purpose of constructing waterworks. The only contribution of capital was that of $5,000 made by the plaintiff. The articles provided that "The profits and losses are to be shared equally by the partners, each being entitled to one-fourth of the profits and to be liable to one-fourth of the losses: Provided, however, that the said Magilton (plaintiff) shall in no event be put to a loss of more than $1,250, and that the balance shall be made up and paid to him in case of greater loss, by the other partners."

After the land on which the works were to have been constructed had been transferred, the enterprise abandoned, and the business become a total failure, plaintiff made a demand on defendants for settlement which was refused, and he then filed a bill in equity for a dissolution and an account. The receiver appointed by the court under the bill was unable to obtain a bid for the personal property on the premises, and nothing of value came into his possession. The master found that such property as remained was worthless. *Held*, (1) that as there were no assets, no accounts to settle, and nothing remained but to adjust the equities between the parties, a decree in favor of plaintiff to make good to him his loss in excess of $1,250 could be entered; (2) that the liability of the defendants to pay the loss of the plaintiff in excess of $1,250 was a joint and several liability; (3) that as the partnership had ended and the defendants had refused after demand to adjust the accounts in accordance with the agreement, there was no error in the allowance of interest.

Argued Jan. 9, 1896. Appeal, No. 396, Jan. T., 1895, by Harry W. Stevenson, one of the defendants, from decree of C. P. No. 2, Phila. Co., Sept. T., 1890, No. 480, in favor of plaintiff on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for the dissolution of a partnership and an account.

The case was referred to Henry D. Paxson, Esq., as master, who reported in part as follows :

Upon September 21, 1890, the plaintiff and defendants entered into a written agreement (a copy of which is a part of the bill filed) to form a partnership under the name of the Commonwealth Construction Company, for the purpose of constructing waterworks at Mayfield, Ky.

The principal provisions of this agreement having reference to the present suit were :

The capital of the concern shall consist of $11,000, at par, of Bridgeport Water Company stock, which is to be contributed by Fullaway, Stevenson and Middleton, and the sum of $5,000 in cash, to be contributed by said Magilton.

The profits and losses are to be shared equally by the partners, each being entitled to one fourth of the profits and to be liable to one fourth of the losses : Provided, however, that the said Magilton shall in no event be put to a loss more than $1,250, and that the balance shall be made up and paid to him in case of greater loss by the other partners.

Although Magilton did not in one payment contribute quite $5,000, yet he was not superseded as treasurer but continued, with the approval of the partners, to act as such, providing from time to time the funds to meet the bills as approved by the partners at meetings held in Philadelphia for that purpose.  The bills paid by him for the purposes of the partnership, as appears by vouchers produced in evidence, amounted to $4,670, and since the present bill was filed the plaintiff advanced $100 to the receiver for his expenses in visiting the scene of the works.

That no books of the company were kept, except the treasurer's cash account, and no statements passed between the partners.   There were no receipts and no revenue of the partnership, and the plaintiff was not reimbursed for any part of the capital contributed by him.

That of the partners Middleton was relied upon to oversee the practical construction of the works upon the grounds at Mayfield, although Stevenson had for a few days visited Mayfield and made a contract for materials, while Fullaway took no

active part other than attending the meetings of the partnership and approving bills.

That the works and affairs of the partnership proved a total failure and there were disagreements and disputes between the partners.

That on February, 1891, the receiver visited the town of Mayfield, Ky., where he found the works incomplete and in a dilapidated condition, and after some effort and correspondence was unable to find a purchaser, the effects being practically worthless.

There are several instances showing that Magilton did not make payments promptly and that the credit of the concern was in disrepute. It was necessary, in order to raise money by bonding the works of the company, to have an amended ordinance passed by the town council of Mayfield, Ky. In this the company failed, the testimony of the defendants shows, because it was in poor credit, attributed by them solely to the tardiness of Magilton. The defendants, however, have never contributed the Bridgeport Water stock, or funds in lieu of it or generally; and in fact one of them, Middleton, applied (although with Magilton's consent) some of the money the latter had contributed for the payment of his board bills while at Mayfield.

By the defendants' total failure to contribute, their fellow partner who was also treasurer might well have been exonerated latterly, if not at the outset, from the payment of any funds on account of the enterprise, and the master does not attach any importance in the defendants' favor to the fact that the stock was worthless, and that even if delivered it might not have materially aided, for Magilton by such failure to deliver would materially lack faith and pause to consider an enterprise which depended principally upon those by whom it had been promoted, and who had not complied with what he properly considered an important element of their agreement, when they had not made amends or offered to do so by the contribution of capital and were drafting upon him to the extent of $4,670. The master therefore, in face of all the facts, cannot lay upon the shoulders of Magilton the sole blame for the unsuccessful result, and is of opinion that the most that could be charged against him would be to say that the failure was due to all of the partners, affected by unfortunate circumstances perhaps over

which they had no control and which figure in many other similar ventures.

That on September 18, 1890, in consequence of the differences and disputes alluded to, the plaintiff addressed the following letter to the defendants, copy of which is annexed to the bill, to wit:

"It is evident that the affairs of the Commonwealth Construction Company should be wound up.

"You have not made the contribution to the capital which was provided for in the contract, and disputes have arisen as to the management of the business.

"You have declined to give me charge of the capital of the firm according to the agreement, and withhold its assets.

"I therefore call upon you to submit the matters at variance between us to arbitration under the terms of our agreement, and name as arbitrator on my behalf Mr. P. F. Kernan, 436 Walnut street, Philadelphia.

"Please give me, before Monday next, the name of the person selected by you."

That the defendants did not accede to the proposition to submit the disputes to arbitration and the bill was filed.

Upon the facts as found the master would report his following

### CONCLUSIONS OF LAW.

1. That the plaintiff was justified in filing his bill in court, inasmuch as the defendants had declined to accept the offer of the plaintiff to submit their differences to an arbitration, in accordance with the terms of the agreement, and paid no attention to the plaintiff's request, is evident, and was not denied upon argument.   That the courts were open for suitors in such cases needs no citation of authority.

2. That a dissolution of the partnership should be decreed as prayed, since it cannot be carried on for the benefit of the parties according to the original intention, and because the enterprise is found to be impracticable.   This was conceded.

3. That where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best but the only evidence of their agreement: Martin v. Berens, 67 Pa. 459; Thorne, McFarlane & Co. v. Warfflein, 100 Pa. 525; Jackson v. Payne, 114 Pa. 67;

English's Appeal, 119 Pa. 533 ; and that this rule should espe-
cially hold in partnership articles (Cochran v. Perry, 8 W. &
S. 262), which are supposed to be entered into with some degree
of solemnity and to be a perpetual guide during possible dis-
sensions, whatever may be the result, and therefore in accord-
ance with the terms of the contract and because of the views
hereinbefore expressed, the master holds an account should be
stated and that, whereas, in acccordance with the terms of the
partnership agreement, Magilton " shall in no event be put to a
loss more than $1,250, and the balance shall be made up and paid
to him in case of greater loss by the other partners," the amount
contributed by the plaintiff being the sum of    .    $4,670 00
Adding to which the amount advanced by him to

the receiver of    .    .    .    .    .    .    .        100 00
                                                  ───────────
                                                   $4,770 00
From which, deducting the amount which it was
agreed should represent the maximum loss of the
plaintiff of    .    .    .    .    .    .    .      1,250 00
                                                  ───────────
        Leaving a balance of    .    .    .    . $3,520 00

which should be paid by the defendants to the plaintiff, and
that they should be held to be jointly and severally liable to the
full payment of the same, together with the costs of the cause,
including a suitable allowance for the services of the receiver.

Exceptions to the master's report were overruled by the court,
no opinion being filed.

*Error assigned* was in overruling exceptions to master's
report.

*John G. Johnson, DeForrest Ballou* with him, for appellant.
—As the partnership affairs had not been settled and as the
loss of Magilton had not been properly ascertained, no decree
should have been entered.

In no event was Magilton entitled to interest until after the
affairs of the firm had been fully liquidated.

Stevenson was not responsible for the whole of three fourths
of Magilton's loss, but only for one third thereof.

*Joseph M. Pile*, for appellee.

OPINION BY MR. JUSTICE FELL, February 17, 1896 :

The first contention of the appellant is that the decree in this case should not have been entered, as the partnership affairs had not been settled and the plaintiff's loss ascertained.   The partnership was formed for the single purpose of constructing waterworks in Mayfield, Ky.   The only contribution of capital was that made by the plaintiff.   The land on which the works were to have been constructed had been transferred and the, enterprise abandoned, and the business was a total failure. The receiver was unable to obtain a bid for the few articles of personal property found on the premises, and nothing of value came into his possession.   The report of the learned master that the remaining property of the partnership was "practically worthless," as explained by the testimony and other parts of his report, is in effect a finding that they were worthless.   There were no assets, no accounts to settle, and nothing remained but to adjust the equities between the parties.

The partnership agreement provides that "the profits and losses are to be shared equally by the partners, each being entitled to one fourth of the profits and to be liable for one fourth of the losses ; provided however that the said Magilton shall in no event be put to a loss more than $1,250, and the balance shall be made up, and paid to him in case of greater loss, by the other partners."   The master held that the liability of the defendants to pay the loss of the plaintiff in excess of $1,250 was a joint and several liability.   It is conceded that the finding of the master on this point would be correct if the parties stood in the relation of strangers, but it is contended that in view of their partnership relation the proviso read in connection with the contract imposes a liability on each of the remaining partners to bear only one third of the plaintiff's loss in excess of $1,250.   The plaintiff furnished the whole cash capital, and the twofold purpose of the proviso was to fix a limit beyond which his loss should not extend, and to secure the repayment by the other partners of the balance of his contribution to the common property.   This was done by providing that the balance should be paid to him by them.   This is the plain meaning of the words used.   In the preceding clause there is a distinct

limitation of individual liability for the general losses of the business, and the omission of this limitation from the proviso is significant, and indicates an intention that each should be liable for the whole in the event of the failure of the others to pay their shares. As the partnership had ended, and the defendants had refused after demand to adjust the accounts in accordance with the agreement, we see no error in the allowance of interest.

The decree is affirmed at the cost of the appellant.